Filed 2/18/26  Williams v. Pasadena Area Community College Dist. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VICTORIA WILLIAMS, | B339793 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV07913) |
| v. | |
| PASADENA AREA COMMUNITY COLLEGE DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Affirmed.

Diversity Law Group, Howard L. Magee, Larry W. Lee; Law Offices of Choi & Associates, Edward W. Choi; Brandon Banks Law, Brandon Banks; David Lee Law and David Lee, for Plaintiff and Appellant.

Walsh & Associates, Dennis J. Walsh; Pollak, Vida & Barer and Daniel P. Barer, for Defendant and Respondent.

—————————

Plaintiff Victoria Williams appeals from a summary judgment entered in favor of defendant Pasadena Area Community College District (the District).[1]  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

"Because this is an appeal from an order granting a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620 (*Bailey*).)  We ignore evidence "to which objections have been made and sustained." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)[2]

The District hired Williams in 2014 as an Administrative Assistant I.  At some point before August 2015, Williams requested a review of the duties she performed in that role.  Around this time, the District hired an outside consultant to

---

[1]  Williams's opening brief identifies the respondent as Pasadena Community College (PCC).  The District asserts that PCC was erroneously named, and that the District is the proper respondent.  Indeed, while the original complaint identified PCC as the sole named defendant, the operative complaint names the District, and not PCC, as a defendant.

[2]  The trial court sustained objections to several pieces of evidence on which Williams relied below.  Williams does not assert that the court abused its discretion in doing so.  However, her opening brief repeats, largely verbatim, the facts and arguments identified in her opposition to summary judgment.  As a result, some of Williams's contentions on appeal rely on evidence that we may not consider.  We address this deficiency as necessary throughout our discussion.

review the job duties and classifications for certain employees. The consultant found that Williams's duties were consistent with her assigned role. The District sent Williams a letter in August 2015 informing her that her position would not be reclassified. Williams later testified that she understood that the District had denied her request. She further testified that she did not contact the interim District superintendent to seek reconsideration of the denial or reassignment to a different position.

In April 2017, Williams's supervisor requested that she be reclassified to a Business Analyst role and provided a justification memorandum. The District again hired a consultant to evaluate the request. The consultant did not recommend reclassifying Williams to the Business Analyst role, and concluded that her current role was appropriate.[3] In December 2017, the District sent Williams a letter informing her that it had denied the request after concluding that her current classification was appropriate.

At some point in 2017, the District superintendent decided that no employees would be reclassified in the near future, pending upcoming departmental reorganizations. In February 2018, Williams's supervisor again requested reclassification of her position. The District's interim Vice President of Human

---

[3] Williams purported to dispute this fact on the basis that the consultant's preliminary recommendation was that Williams might be qualified for a role "beyond" administrative assistant. But she does not contest that the consultant ultimately concluded that her classification was appropriate.

Resources chose not to process the request, citing the superintendent's directive.[4]

Tony Au and Katherine Winslow worked in the same department as Williams. Au and Winslow were initially hired as "temporary professional experts." In Spring 2018, the department changed these positions from "part-time casual positions" to "permanent part-time positions" in order to comply with a PCC-wide directive. Au and Winslow interviewed for the new positions and were ultimately hired. The department's director testified that this change was not a reclassification.

Meanwhile, in December 2017, Williams filed an administrative complaint with the Department of Fair Employment and Housing (DFEH). The complaint alleged, among other things, that the District discriminated against Williams when it denied her reclassification requests in 2015 and 2017. The DFEH found no basis to proceed, dismissed the case, and sent Williams a right to sue notice in January 2018.

Williams sued the District in December 2018 for race and gender discrimination under the Fair Employment and Housing Act (FEHA).

In 2019, Williams again applied for reclassification. A committee unanimously denied her request in August 2019.

In April 2021, Williams filed the operative second amended complaint. She brought claims against the District for race discrimination, gender discrimination, and injunctive relief, all

---

[4]     Williams purported to dispute these facts on the basis that other employees were reclassified around this time. But Williams did not dispute that the superintendent issued the directive, nor that the directive was the stated basis for the denial of her 2018 request.

4

pursuant to Government Code section 12940, subdivision (a).[5] The complaint also brought claims for injunctive relief under Education Code section 45510, retaliation under section 12940, subdivision (h), and failure to prevent discrimination and retaliation under section 12940, subdivision (k).

The operative complaint alleged that the District retaliated against Williams for filing the original complaint. It specifically alleged that the District retaliated by changing her job duties, denying her 2019 reclassification request, and threatening to terminate her while she was on approved Family and Medical Leave Act (FMLA) leave.

The District moved for summary judgment on all causes of action in August 2023. The motion first asserted that under the then-applicable version of section 12960, a person bringing a claim under section 12940 was required to file an administrative complaint with the DFEH within one year of any alleged unlawful practice. Because Williams complained to DFEH on December 22, 2017, the motion argued that Williams's race discrimination claim was time-barred to the extent that it relied on events that occurred before December 22, 2016.

The motion further contended that Williams could not produce evidence to support a prima facie case of race discrimination. The District pointed to Williams's deposition testimony that no District employee had ever made a derogatory comment about her race. When asked how the district was "engaging in discriminatory practices," Williams testified that she did not know. Williams also testified that she was not aware whether the employee who denied her reclassification request in

---

[5] All further undesignated statutory references are to the Government Code.

5

2017 was biased against her, and that she had no "assessment" as to whether her 2019 request was denied based on her race or gender.

The District also identified nondiscriminatory reasons for each denied reclassification request. It asserted that the 2017 request was denied pursuant to an outside contractor's neutral recommendation. It cited evidence that the District superintendent had decided no employee would be reclassified in late 2017 or early 2018, and that the District denied Williams's 2018 request pursuant to that directive. In addition, the District pointed to evidence that the committee that denied Williams's 2019 request included her union president, who was African American, and that the committee unanimously decided that she did not qualify for reclassification.

The District's motion asserted that the above arguments also warranted summary judgment on Williams's gender discrimination cause of action and her claims for declaratory and injunctive relief under section 12940, subdivision (a), and Education Code section 88010.

As for the retaliation claim, the motion contended that Williams could not establish that she suffered an adverse employment action, a required element of a prima facie case of retaliation. The District cited Williams's deposition testimony that as of July 2023, she was performing the same job duties that she performed before filing suit. It also pointed to her testimony that the district allowed her to return to her role following her FMLA leave, and that she was not disciplined for taking medical leave. The District argued that these admissions contradicted Williams's allegations that the District changed her duties and

6

stopped her from returning to work while she was on FMLA leave.

Finally, the motion asserted that the cause of action for failure to prevent discrimination and retaliation necessarily failed if Williams's underlying claims for discrimination and retaliation failed.

Williams's opposition to summary judgment asserted that the continuing violation doctrine permitted her to bring claims based on events prior to December 22, 2016. That doctrine allows a party to bring a FEHA claim based on a continuing pattern of conduct that began more than one year before a formal complaint, so long as at least some of the conduct occurred within the statutory period.

The opposition also argued that Williams could establish a prima facie case of discrimination because her 2015 and 2017 reclassification requests were denied, while two unidentified non-African American coworkers were reclassified. It asserted that the District did not have a nondiscriminatory reason for denying Williams's reclassification requests.

Williams incorporated the above arguments by reference in opposing summary judgment on her claims for gender discrimination and declaratory and injunctive relief.

The opposition argued that Williams's retaliation claim could survive because she engaged in protected activity by lodging "various complaints" about race discrimination, and because the District failed to properly classify or pay her for performing work outside of her classification.

Finally, the opposition asserted that the failure to prevent discrimination claim was viable because the District was aware that Williams, the Pasadena branch of the National Association

7

for the Advancement of Colored People (NAACP), the Vice Mayor of Pasadena, and a PCC professor complained to the District about race discrimination, but the District did not investigate those complaints.

The trial court held a hearing on the summary judgment motion in January 2024, and granted the motion in its entirety. The court concluded that Williams's claims were time barred to the extent they were premised on conduct that occurred before December 2016. The court also determined that Williams failed to establish a prima facie case of discrimination. It rejected her assertion that the Department discriminated against Williams by refusing to reclassify her around the same time that it moved Au and Winslow to permanent roles. The court found that this change was not a reclassification. Finally, the court determined that the District had identified nondiscriminatory reasons for not reclassifying Williams, and that Williams failed to establish that those reasons were pretextual. The court concluded that the District was entitled to summary judgment on Williams's claims for race discrimination, gender discrimination, and injunctive relief under both section 12940, subdivision (a) and Education Code section 88010.

The court also determined that the district was entitled to summary judgment on Williams's retaliation claim because Williams failed to identify any evidence that she experienced an adverse employment action. Finally, the court granted summary judgment for the District on the failure to prevent discrimination and retaliation claim, reasoning that the claim failed since Williams failed to establish any underlying discrimination or retaliation.

8

The trial court entered judgment for the District on June 10, 2024. Williams timely appealed.

## DISCUSSION

Williams argues that the trial court erred by granting summary judgment for the District. We disagree and affirm.

## I.  Standard of review and applicable law

The trial court may grant summary judgment if there are no triable issues of material fact such that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) A defendant moving for summary judgment has the initial burden of showing that the plaintiff cannot establish an element of the cause of action or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) If the defendant makes this initial showing, the burden shifts to the plaintiff to present evidence demonstrating a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)

FEHA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Guz, supra,* 24 Cal.4th at p. 354.) Under this framework, at trial, the plaintiff has the initial burden of establishing a prima facie case of discrimination. (*Id.* at p. 355.) If the plaintiff meets this burden, a rebuttable presumption of discrimination arises. (*Ibid.*) The employer may rebut the presumption by producing admissible evidence that it acted for nondiscriminatory reasons. (*Ibid.*) If the employer succeeds, the presumption of discrimination is overcome, and the employee

9

may "attack the employer's proffered reasons as pretexts for discrimination, or . . . offer any other evidence of discriminatory motive." (*Id.* at p. 356.)

Thus, in challenging a FEHA claim at summary judgment, an employer has the initial burden of demonstrating that the employee cannot prove one or more elements of his or her prima facie case. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861 (*Serri*).) If the employer succeeds, the burden shifts to the employee to demonstrate a triable issue of fact on the challenged elements of his or her prima facie case. (*Ibid.*) The employer may alternatively submit evidence that the employee was terminated for legitimate, nondiscriminatory reasons. (*Guz, supra*, 24 Cal.4th at p. 358; *Serri* at p. 861.) The burden then "shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus,* such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' " (*Serri*, at p. 861.)

" ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 (*Hampton*).)

**II.** **The trial court properly granted summary judgment on Williams's claims for race and gender discrimination[6] and declaratory and injunctive relief**

**A.** *Williams's claims based on conduct prior to December 22, 2016 are time barred*

Williams first argues that the trial court erred by concluding that her claims were time-barred to the extent that they are based on conduct that occurred before December 22, 2016. We disagree.

Before a plaintiff may pursue a FEHA action in court, he or she must first file an administrative complaint with the DFEH. (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613.) The former version of section 12960 required that an administrative complaint be filed within one year of the alleged violation. (Former § 12960, subd. (d), amended eff. Jan. 1, 2020, by Stats. 2019, ch. 709.) Williams filed an administrative complaint on December 22, 2017. The District therefore argued at summary judgment, and the trial court agreed, that Williams's FEHA claims could not rely on any events prior to December 22, 2016.

Williams does not dispute that the one-year limitations period applies to her claims. Instead, she contends that her

---

**6** In her opening brief, Williams asserts in passing that she can "prevail on her claim for . . . gender discrimination." Williams does not elaborate on this assertion elsewhere in her briefing. We reject any argument as to the gender discrimination claim as forfeited and affirm summary judgment. (*Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 39 (*Siskiyou*) ["conclusory assertion of legal error . . . results in forfeiture of the claim"].)

11

claims may rely on earlier events pursuant to the continuing violation doctrine. Under that doctrine, an employer is liable for actions outside the limitations period "if the employer's unlawful actions are (1) sufficiently similar in kind . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 (*Richards*).) "[W]hen the defendant has asserted the statute of limitation defense, the plaintiff has the burden of proof to show his or her claims are timely under the continuing violation doctrine." (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1402 (*Jumaane*).)

Williams asserts that the District should be liable for its 2015 denial of her reclassification request under the continuing violation doctrine. That denial is sufficiently similar to other acts on which Williams relies—namely, the District's denial of similar reclassification requests in 2017, 2018, and 2019. We nonetheless conclude that the doctrine does not apply. "[A] series of rejected job applications does not demonstrate a continuing violation." (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 65; cf. *National Railroad Passenger Corp. v. Morgan* (2002) 536 U.S. 101, 114 ["Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' "].) And the 2015 denial was formalized in a written letter, which conveyed to Williams that the decision was *permanent. (Morgan v. Regents of University of California, supra*, at p. 66 [notification that plaintiff was not hired had a " 'degree of permanence' "].) Williams testified that she did not attempt to challenge the decision or

12

seek assignment to a different role, which supports that she understood the decision to be permanent and final. (*Richards*, *supra*, 26 Cal.4th at p. 823 [permanence means "that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation . . . will be futile"].)

Williams has not provided any meaningful argument to the contrary. Her opening brief describes the *Richards* case and then asserts, in a single sentence, that the 2015 denial was part of a continuing violation. But an appellant has the burden of establishing error, and must do "more than simply stating a bare assertion that the challenged judgment or order is erroneous and leaving it to the appellate court to figure out why." (*Siskiyou*, *supra*, 109 Cal.App.5th at p. 39; *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 313 (*St. Myers*) [conclusory assertion " 'without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate' "].)

Williams also argues that the continuing violation doctrine should apply because the District's superintendent testified that he was aware of accusations that the school had not hired enough African American faculty members. Williams did not raise this point in her opposition to summary judgment, and we need not consider it for the first time on appeal. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 704 (*Meridian*).) Even if the contention were not forfeited on that basis, Williams fails to explain why the superintendent's knowledge of accusations relating to faculty members affects our analysis of the continuing violation doctrine as applied to Williams, who worked as an administrative assistant. (*St. Myers*, *supra*, 44 Cal.App.5th at p. 313 [conclusory assertions inadequate].)

13

Finally, for the first time in her reply brief, Williams asserts that the 2015 denial did not have a degree of permanence because her department had no permanent director at the time. " 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) That concern is compounded here because Williams did not raise the point in her opposition to summary judgment. (*Meridian, supra,* 67 Cal.App.5th at p. 704 [appellate courts ordinarily will not consider points "not raised or factually developed in the trial court"].) We decline to consider this argument.

Williams has not met her burden of establishing that the continuing violation doctrine applies. (*Jumaane, supra* 241 Cal.App.4th at p. 1402.) In assessing her FEHA claims, we limit our analysis to evidence of conduct that occurred after December 22, 2016.

### B. The trial court properly granted summary judgment on Williams's race discrimination claim

Williams next asserts that the trial court erred by concluding that she failed to establish a prima facie case of race discrimination and by accepting the District's proffered nondiscriminatory reasons for denying her reclassification requests. Even assuming that Williams can establish a prima facie case of race discrimination, we conclude that the District presented sufficient evidence of nondiscriminatory reasons for each of the denied reclassification requests, and that Williams failed to establish a material fact dispute on this issue. We

14

therefore affirm summary judgment on Williams's race discrimination claim.

At summary judgment, the District provided evidence that it declined to reclassify Williams for nondiscriminatory reasons. Specifically, in 2017, an outside contractor reviewed Williams's duties and classification description and determined her current classification was appropriate. In early 2018, the District chose not to process Williams's reclassification request because the superintendent had recently directed departments to not reclassify any employees in light of upcoming departmental reorganizations. And in 2019, after reviewing Williams's duties and classification, a committee unanimously decided that Williams was not performing the work of a Business Analyst and denied her request to be reclassified to that role.

This evidence was sufficient to shift the burden to Williams to " 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus,* such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' " (*Serri*, *supra*, 226 Cal.App.4th at p. 861.) At this stage, "[i]t is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive." (*Id.* at p. 862.) Instead, the employee must identify " 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Ibid.*)

In the trial court and on appeal, Williams argues that there is a triable controversy regarding the District's stated

15

nondiscriminatory reasons because the District reclassified two members of her department in 2017, despite the superintendent's directive to not reclassify anyone.[7]  Around the same time, Williams's own reclassification request was denied.  It is difficult to assess this argument, because Williams fails to support it with citations to the record or even the names of the employees. However, in reviewing the trial court ruling de novo, we consider all the evidence presented at summary judgment.  (*Hampton, supra*, 62 Cal.4th at p. 347.)  We presume that Williams refers to Au and Winslow, two employees in Williams's department who moved into new positions in Spring 2018.  But the only evidence on this issue reflects that Au and Winslow were not reclassified— they were hired as temporary workers, and later applied for and were hired into permanent roles.  Since Au and Winslow were not reclassified, these changes did not violate the superintendent's directive, and do not suggest that the District's stated explanation for denying Williams's 2018 reclassification request was pretextual.  This evidence is insufficient to create a triable fact dispute in the face of the District's "plausible, and largely uncontradicted, explanation" for the 2018 denial.  (*Guz, supra*, 24 Cal.4th at pp. 369–370.)

Williams also asserts that her race discrimination claim may proceed "based solely" on the District's failure to investigate accusations of race discrimination.  Although Williams again fails to support this argument with citations to the record, she appears

---

[7]     Williams also asserts that two of her coworkers were reclassified in 2015, again without citing to the record or naming the employees.  As we have discussed, however, Williams may not rely on any acts predating December 2016 to support her claims.

to refer to the evidence described in a subsection of the fact statement in her opening brief, entitled: "Legacy of Discrimination at the PCC and PCC's History of Turning a Blind Eye to Charges of Discrimination."[8] Under that header, Williams discusses four letters that were sent from community members to the president of the PCC Board of Trustees between March 2018 and February 2019.[9] The letters encouraged the District to reclassify Williams and expressed concern about the District's "employment practices that appear to discriminate related to Black employees, especially that of Black women." Williams asserts that the District failed to investigate these claims, and the District has provided no evidence to the contrary.

The District's failure to investigate the accusations in the four letters does not constitute " 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus." (*Serri*, *supra*, 226 Cal.App.4th at p. 862.) The letters expressed concern that Williams had not been reclassified and, more generally, about the District's employment practices. This establishes that the District was aware of these concerns when it denied Williams's 2019 reclassification request. But the letters say nothing about

---

[8] Under the same header, Williams mentions two articles published by the Pasadena Community College Courier. But the trial court denied Williams's request for judicial notice of those articles, and Williams has not challenged that ruling on appeal.

[9] At summary judgment, the District objected to these letters as inadmissible hearsay. The court sustained the objection as to the truth of the issues discussed therein, and considered the letters "for the limited purpose of showing that something was presented to the college."

the District's motives. Nor do the letters refute the District's proffered explanation of the 2019 denial—that a committee unanimously determined Williams was unqualified for the role to which she sought to be reclassified. Since that explanation is uncontradicted, we conclude that Williams has not raised a triable issue of fact as to whether the District's stated reasons were pretextual. (*Guz*, *supra*, 24 Cal.4th at pp. 369–370 [evidence supporting "a weak suspicion" of discrimination insufficient create a fact dispute in the face of employer's "plausible, and largely uncontradicted" evidence of nondiscriminatory reason].)

Williams also asserts that the District's awareness of the letters triggered an obligation to investigate the accusations therein. For this proposition, Williams's opening brief cites *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021. But *Northrop Grumman* was not a discrimination case. It was an appeal from a Workers' Compensation Appeals Board decision. That Board found that an individual sustained a compensable injury based on a bad faith investigation into racial discrimination allegations. (*Id.* at p. 1023.) The appellate court stated in passing that the investigation was legally required pursuant to an employer's duty to prevent discrimination, under section 12940, subdivision (k). (*Northrop*, at p. 1035.) This statement was dicta; the court's ultimate ruling was that the Board decision was factually unsupported. (*Id.* at p. 1037.) The case does not support Williams's claim that the absence of an investigation necessarily establishes a fact dispute as to whether a subsequent employment action was discriminatory.

18

In her reply, Williams cites two additional cases discussing investigations: *Mendoza v. Western Medical Center Santa Ana* (2014) 222 Cal.App.4th 1334 and *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243 (*Nazir*). These cases are also inapposite. In *Mendoza*, an employee alleged he was fired in retaliation for reporting sexual harassment allegations and sued for wrongful termination. (*Mendoza*, at p. 1336.) The employer investigated the allegations and fired the employee for unprofessional conduct after the investigation was complete. (*Id.* at pp. 1336–1337.) At trial, the employee's expert testified that the investigation was inadequate, and a jury found for the employee. (*Id.* at pp. 1334, 1336.) The appellate court concluded that the verdict was supported by substantial evidence, reasoning in part that the inadequate investigation suggested that the employer did not wish to find the truth. (*Id.* at p. 1344.)

In *Nazir*, an employer received a complaint about an employee, conducted an investigation, and fired the employee. (*Nazir*, *supra*, 178 Cal.App.4th at p. 261.) The employee brought a FEHA discrimination claim. At summary judgment, the employer asserted that it had conducted an " ' "appropriate investigation" ' " before firing the employee, which would have been sufficient to support that the termination was for good cause under the applicable legal framework. (*Id.* at p. 271, citing *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93.) The appellate court reversed summary judgment on the discrimination claim, reasoning that the employee established a triable fact issue by pointing out that the person who led the investigation "had an axe to grind" with the employee. (*Nazir*, at p. 277.)

19

In both *Mendoza* and *Nazir*, an employer chose to investigate allegations relating to an employee and terminated the employee thereafter. And in each case, the court reasoned that when an employer terminates an employee following an investigation, evidence that the investigation was inadequate may indicate that the termination was discriminatory or retaliatory. But neither case stands for the proposition that an employer must investigate accusations of discrimination. As we have discussed, the District's awareness of the letters did not establish a fact dispute as to the proffered nondiscriminatory explanation for denying Williams's reclassification requests. We affirm summary judgment on Williams's claim for race discrimination.

### C. *The court correctly granted summary judgment on Williams's dependent claims for declaratory and injunctive relief*

The trial court concluded that Williams's claims for declaratory and injunctive relief, pursuant to section 12940, subdivision (a), and Education Code section 45510 failed for the same reasons as her discrimination claims. On appeal, Williams does not challenge this ruling. Her argument on these causes of action cross-reference her arguments relating to discrimination and offers no independent basis to reverse. Because we affirm summary judgment on the discrimination claim, we also affirm as to the two declaratory and injunctive relief causes of action.

## III. The trial court properly granted summary judgment on Williams's retaliation claim

Next, Williams argues that the trial court erred by granting summary judgment on her retaliation claim. We disagree.

20

"To establish a prima facie case of retaliation under FEHA, an employee must show that (1) she engaged in a 'protected activity,' (2) the employer subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Bailey*, *supra*, 16 Cal.5th at p. 636.)  An adverse employment action includes " 'failure to promote' " as well as any act " 'reasonably likely to adversely and materially affect an employee's job performance or opportunity for career advancement.' " (*Meeks v. Autozone, Inc.* (2018) 24 Cal.App.5th 855, 879 (*Meeks*).)

The operative complaint alleged that Williams engaged in protected activity by filing a lawsuit against the District in December 2018.  It also alleged that the District retaliated against Williams thereafter by interfering with and changing her job duties, and by informing her that she would be terminated while she was on medical leave.  The operative complaint further alleged that the District retaliated against Williams by denying her 2019 reclassification request.

At summary judgment, the District argued that Williams could not establish a prima facie case of retaliation because she did not suffer an adverse employment action.  The District submitted evidence that Williams had been performing the same duties she performed previously, and that she was permitted to remain on medical leave and, after her doctor cleared her, to return to work.  This was enough to shift the burden to Williams to identify " 'specific facts showing that a triable issue of material fact exists' " as to an adverse employment action.  (*Aguilar*, *supra*, 25 Cal.4th at p. 849; *Bailey*, *supra*, 16 Cal.5th at p. 636.)

Williams does not attempt to establish a fact dispute on the issues identified by the District.  She instead contends that the

21

District retaliated against her by failing to properly classify her and/or pay her for performing work outside of her classification. These assertions are unsupported by citations to the record, and Williams fails to identify any specific facts that might clarify the basis for her retaliation theory. However, reviewing the summary judgment record de novo, we recognize that Williams submitted evidence that the District denied her reclassification request in August 2019, approximately eight months after she filed this lawsuit. Evidence that Williams was denied reclassification to a different position is sufficient to create a fact dispute as to whether she suffered an adverse employment action. (*Meeks*, *supra*, 24 Cal.App.5th at p. 879 [adverse employment actions include those " 'reasonably likely to adversely and materially affect an employee's . . . opportunity for career advancement' "].)

As we have discussed, however, the District also identified evidence that a committee unanimously reviewed Williams's duties and role in 2019, concluded that she was not performing the work of a Business Analyst, and denied her request to be reclassified to that role. This was sufficient to shift the burden to Williams to identify " 'substantial responsive evidence' demonstrating the existence of a material triable controversy" on pretext or retaliatory intent. (*Serri*, *supra*, 226 Cal.App.4th at p. 862.) Williams has not identified any evidence that could create a triable fact issue as to the District's "plausible, and largely uncontradicted, explanation" for denying her 2019

reclassification request. (*Guz, supra*, 24 Cal.4th at pp. 369–370.) We therefore affirm summary judgment on that count.[10]

## IV. The trial court correctly granted summary judgment on Williams's claim for failure to prevent discrimination and retaliation

Finally, Williams also challenges the trial court ruling as to her failure to prevent claim. Under the FEHA, it is unlawful "[f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).) The trial court reasoned that a failure to prevent claim is dependent on an actionable claim for discrimination or retaliation, and granted summary judgment on the basis that Williams failed to establish a prima facie case of either cause of action. (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 173.) Because we affirm summary judgment on Williams's discrimination and retaliation claims, we also affirm summary judgment on her failure to prevent claim.

---

[10] Although the trial court granted summary judgment by finding that Williams had not established a triable fact dispute on any adverse employment action, we may affirm on any basis supported by the record. (*Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 254.)

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its appellate costs.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

HANASONO, J.

We concur:

EDMON, P. J.

EGERTON, J.

24